Ferman JONES, Jr., Appellant,

v.

STATE of Iowa, Appellee.

No. 89–53.

Supreme Court of Iowa.

Dec. 24, 1991.

Rehearing Denied Feb. 19, 1992.

266

Thomas T. Tarbox of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and Joseph R. Gunderson, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Applicant Ferman Jones, Jr., filed an application for postconviction relief wherein he alleged numerous errors concerning his 1981 conviction for second-degree murder. See Iowa Code §§ 663A.2, 663A.3 (1983). The district court denied the application and Jones has appealed. We affirm.

I. *Background facts and proceedings.* In early 1981, Jones and Daniel Elam were charged with first-degree murder for the shotgun slaying of Chris Stevens. Jones' case went to trial before Elam's, and Jones was convicted of second-degree murder for aiding and abetting Elam in Stevens' murder. See Iowa Code §§ 703.1, 707.1, 707.3 (1981). Elam subsequently was convicted of first-degree murder. See Iowa Code §§ 707.1, 707.2. Our court of appeals affirmed Jones' conviction.

In September 1984, Jones filed his application for postconviction relief.[1] See Iowa Code §§ 663A.2, 663A.3 (1983). He claims: (1) that he was denied effective assistance of both trial and appellate counsel due to his counsels' failures to have his trial continued until after Elam's trial; (2) that he is entitled to a new trial due to newly discovered evidence; and (3) that he is entitled to a new trial due to prosecutorial misconduct.

After a hearing, the postconviction court denied Jones' application. Jones has now appealed. See Iowa Code § 663A.9 (1989). On this appeal, he also contends that he is entitled to a second postconviction trial because he was allegedly incompetent at the time of his original postconviction hearing.

We, now, conclude that Jones is not entitled to a second postconviction hearing, and affirm the postconviction court's denial of Jones' application.

II. *Claim for a second postconviction hearing.* As an initial matter, Jones claims that the postconviction court erred in proceeding with his postconviction hearing. He argues that he was incompetent at the time of the hearing and thus unable to assist his attorney in his case. He therefore claims that he is entitled to a second postconviction hearing. We disagree.

A. Iowa Code chapter 812 outlines procedures for confinement of mentally ill or dangerous persons. More specifically, section 812.3 provides, in part, as follows:

> If at any stage of a *criminal proceeding* it reasonably appears that the defendant is suffering from a mental disorder which prevents the *defendant* from appreciating the *charge,* understanding the proceedings, or assisting effectively in

---

1. Jones amended his application on two occasions subsequent to September 1984.

the *defense*, further proceedings must be suspended and a hearing had upon that question.

(Emphasis supplied.) Additionally, section 812.4 provides, in part, as follows:

If, upon hearing conducted by the court, the *accused* is found to be incapacitated in the manner described in section 812.3, no further proceedings shall be taken under the *complaint or indictment* until the *accused's* capacity is restored. . . .

(Emphasis supplied.)

Jones argues that, because he was allegedly suffering from a mental illness at the time of his postconviction relief hearing, the hearing should have been suspended in accord with Iowa Code sections 812.3 and 812.4. We disagree with Jones' contention because we do not believe that chapter 812 applies to postconviction relief proceedings under Iowa Code chapter 663A.

■ This conclusion is supported by the general rule that postconviction relief proceedings are not *criminal* proceedings, but rather are *civil* in nature and are triable at law to the court. *See Pennsylvania v. Finley*, 481 U.S. 551, 556–57, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539, 547 (1987); *Emery v. Fenton*, 266 N.W.2d 6, 10 (Iowa 1978); 18 Am.Jur.2d *Coram Nobis*, §§ 45–46, at 672–74 (1985); 24 C.J.S. *Criminal Law*, § 1612, at 216 (1989). Many of the constitutional safeguards guaranteed an individual in criminal trial proceedings are not granted to such an individual in subsequent postconviction proceedings. *See Fuhrmann v. State*, 433 N.W.2d 720, 722 (Iowa 1988) (attorney need not always be appointed to represent an individual postconviction applicant) (citing *Finley*, 481 U.S. at 555, 107 S.Ct. at 1993, 95 L.Ed.2d at 545); *Sallis v. Rhoads*, 325 N.W.2d 121, 123 (Iowa 1982) (no absolute right to appear at postconviction hearing); *Hahn v. State*, 306 N.W.2d 764, 767 (Iowa 1981) (no right to compulsory process at postconviction hearing); *Patterson v. State*, 294 N.W.2d 683, 685 (Iowa 1980) (postconviction hearing need not always include applicant's own testimony); *State v. Gruber*, 281 N.W.2d 636, 639 (Iowa 1979) (no right

to a hearing in postconviction proceedings for every allegation); *Watts v. State*, 257 N.W.2d 70, 71 (Iowa 1977) (burden of proof is on applicant in postconviction proceedings to show error by a preponderance of the evidence).

Furthermore, our conclusion that chapter 812 does not apply to proceedings under chapter 663A is supported by the plain language of sections 812.3 and 812.4, which we believe evidences a legislative intent that postconviction proceedings not be subject to suspension due to a claimed lack of competence by the postconviction applicant. Section 812.3 specifically applies to *criminal proceedings* where a defendant does not appreciate the *charges* against him, or is prevented from assisting in his *defense*. As stated above, postconviction relief proceedings are not "criminal proceedings" involving "charges" and a "defense." They are collateral actions initiated by an incarcerated individual challenging a prior conviction. Additionally, section 812.4 provides that, upon a court's finding of an *accused's* incapacitation, "no further proceedings shall be taken under the *complaint or indictment*." No "complaints" or "indictments" are involved in postconviction relief proceedings; such proceedings are initiated by an individual's filing of an application with the district court. *See* Iowa Code § 663A.3 (1991). "Complaints" and "indictments" initiate the *State's* criminal prosecution of an *accused. See, e.g.*, Iowa Code §§ 802.8(1), 804.1.

■ B. Jones also claims that he is entitled to a second postconviction hearing because a guardian should have been appointed to assist him in his defense pursuant to Iowa Rule of Civil Procedure 12. Rule 12 provides that "[a]n action of . . . any person judicially adjudged incompetent shall be brought by his guardian. . . ." Jones may not avail himself of this provision, however, because at no time before his postconviction hearing was he ever "judicially adjudged incompetent." Additionally, he did have an attorney to represent him during all postconviction proceedings.

C. In any event, we do not believe that Jones' mental condition entitles him to a second postconviction hearing. As a general rule, a competency hearing is required if the "record contains information from which a reasonable person would believe a substantial question of the defendant's competency exists." *State v. Kempf,* 282 N.W.2d 704, 706 (Iowa 1979); *see also Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 112–13 (1975) (one who lacks capacity to understand proceedings against him or to aid in his defense may not be subjected to a trial). A criminal defendant is initially presumed to have been competent. *State v. Pedersen,* 309 N.W.2d 490, 496 (Iowa 1981). The burden is on that defendant to establish otherwise; if the evidence is in equipoise, the presumption of competency prevails. *Id.* Our task on our de novo review is to examine the totality of the circumstances to determine if, at the relevant time, a substantial question of the applicant's competency reasonably appeared. *Kempf,* 282 N.W.2d at 707. The relevant factors to consider include: (1) the applicant's irrational behavior; (2) any demeanor at the hearing which suggests a competency problem; and (3) any prior medical opinion, of which the trial court is aware, on competence to stand trial. *State v. Myers,* 460 N.W.2d 458, 460 (Iowa 1990). Although Jones presented a history of mental illness to the postconviction court, it is well-established that the mere presence of mental illness does not equate to incompetency to stand trial. *Hickey v. District Court of Kossuth County,* 174 N.W.2d 406, 410 (Iowa 1970).

Based upon our review of the record as it existed at the time of the postconviction hearing, we conclude that the postconviction court did not err in failing to *sua sponte* order a competency hearing. Jones' present claim of incompetency at the time of the hearing is belied by the rationality and coherence he displayed to the postconviction court. Jones spoke in full sentences, explained the events of the night of Stevens' murder and Jones' involvement with Elam, and indicated that he understood the questions being asked of him. We find no evidence of any irrational behavior in the record, and note that Jones had the ability to aid his attorney by directing, albeit unartfully, that certain questions be asked, by asking the State's attorney whether Jones had received all of the exculpatory evidence which was available, and by directing that his counsel re-open the proceedings after Jones had rested.

We also find it significant that neither Jones, nor his attorney, nor the trial court requested a competency determination at the time of the hearing. *See State v. Lucas,* 323 N.W.2d 228, 233 (Iowa 1982); *State v. Lyon,* 293 N.W.2d 8, 12 (Iowa 1980); *State v. Stoddard,* 180 N.W.2d 448, 451 (Iowa 1970). Although this failure cannot alone preclude a subsequent competency challenge on grounds of error preservation, *Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 · L.Ed.2d 815, 821 (1966), we nevertheless note that Jones had presented to the postconviction court a history of mental illness. Also before the postconviction court were a series of prior court orders mandating that the Iowa security medical facility provide mental treatment to Jones, as well as responses to those orders from personnel at that facility noting Jones' repeated refusals to cooperate in or accept treatment when it was provided to him. Yet, despite this history, neither Jones nor his counsel, at any time during the postconviction proceedings, requested that the hearing be suspended. *Cf. State v. Washington,* 257 N.W.2d 890, 893 (Iowa 1977), *cert. denied,* 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978) (party to a criminal proceeding may not complain of error where he himself has acquiesced in, committed, or invited the error).

Finally, we do not believe that inmate Jones' apparent dissatisfaction with the facilities and treatment available at the security medical facility otherwise entitles him to a special avenue of relief. An inmate's well-established right to mental health care does not encompass the right to a type of care personally desirable to him, and an inmate has no right to a course of treatment that he requests. *Massey v.*

*Hutto,* 545 F.2d 45, 46 (8th Cir.1976); *Henderson v. Secretary of Corrections,* 518 F.2d 694, 695 (10th Cir.1975). *See generally* 72 C.J.S. *Prisons,* § 88, at 496 (1987); 60 Am.Jur.2d *Penal and Correctional Institutions,* § 91, at 1188 (1987).

D. In sum, we conclude that Iowa Code chapter 812 is not applicable to postconviction relief proceedings under chapter 663A. The same is true under this record for Iowa Rule of Civil Procedure 12. We also conclude that, in any event, Jones is not entitled to a second postconviction hearing because he has failed to rebut the presumption that he was competent at the time of his postconviction hearing.

III. *Ineffective assistance of trial counsel.* Before Jones' criminal trial, his trial attorney attempted to obtain deposition testimony from Jones' codefendant Elam that Elam had acted in self-defense when he shot Chris Stevens. Elam, however, refused to provide any such testimony, based upon his privilege against self-incrimination under the fifth amendment to the United States Constitution, until after his own trial. In order to obtain Elam's testimony, Jones' trial attorney moved to continue Jones' trial until after Elam's trial. *See* Iowa R.Civ.P. 182. The motion was supported by an affidavit from Elam's attorney stating in general that Elam could provide some exculpatory evidence but that the attorney would not allow Elam to testify at Jones' trial until after Elam's trial occurred. The motion was denied, however, because the affidavit in support of the motion did not show what particular facts Elam's attorney believed Elam would be able to prove. *See* Iowa R.Civ.P. 183(b)(3).

In his application and on this appeal, Jones contends that his trial attorney rendered ineffective assistance of counsel by his unsuccessful attempt to continue Jones' trial until after Elam's trial. This contention is based upon Jones' belief that an aider and abetter such as Jones should be tried after the trial of a principal such as Elam.

 In order to assert a claim of ineffective assistance of trial counsel in a postconviction proceeding, an applicant such as Jones ordinarily must show that his claim was preserved for review by being made on direct appeal. *See Washington v. Scurr,* 304 N.W.2d 231, 235 (Iowa 1981). However, a claim of ineffective assistance of trial counsel may be made in a postconviction proceeding, even if not made on direct appeal, if the applicant establishes by a preponderance of the evidence "sufficient reason" for not having raised the issue at trial and on direct appeal, and also establishes actual prejudice resulting from the alleged errors. *Polly v. State,* 355 N.W.2d 849, 855–56 (Iowa 1984). Ineffective assistance of appellate counsel may provide "sufficient reason" to permit the issue of ineffective assistance of trial counsel to be raised for the first time in a proceeding for postconviction relief. *Washington,* 304 N.W.2d at 235.

We conclude that Jones has not demonstrated "sufficient reason" for having not raised, on direct appeal from his criminal trial, the issue of ineffective assistance of trial counsel. We also conclude that Jones has not shown actual prejudice for having not raised the issue because (1) Jones was not rendered ineffective assistance of trial counsel, and (2) an aider and abetter such as Jones does not have a right to be tried after a principal such as Elam.

 As noted above, postconviction relief proceedings under Iowa Code chapter 663A are civil actions at law and are ordinarily reviewed on error. *Kane v. State,* 436 N.W.2d 624, 626 (Iowa 1989). But where, as here, the postconviction applicant asserts violations of constitutional safeguards, we make our own evaluation of the totality of the circumstances in a de novo review. *Id.*

 To establish a claim of ineffective assistance of trial or appellate counsel, we have indicated that the applicant must show: 1) that counsel's performance fell outside a normal range of competency; and 2) that the deficient performance so prejudiced the defense as to deprive the criminal defendant of a fair trial. *State v. Losee,* 354 N.W.2d 239, 243 (Iowa 1984); *Strick-*

land v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Representation by counsel is presumed competent, and a postconviction applicant has the burden to prove by a preponderance of the evidence that counsel was ineffective. *Kane*, 436 N.W.2d at 627. Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Id.*

■ As stated above, we do not believe that Jones has shown "sufficient reason" for having failed to raise, on the direct appeal from his criminal trial, his claim of ineffective assistance of trial counsel, because he has failed to show that his appellate counsel was ineffective for not having raised the issue on direct appeal. One of Jones' appellate attorneys testified at the postconviction hearing that he considered raising the issue of ineffective assistance of trial counsel, but decided against this course of action based upon his review of the record before the trial court. He decided instead to appeal on the ground that the trial court abused its discretion in denying the motion for continuance. We have stated that tactical decisions such as this are usually immune from subsequent attack by an aggrieved defendant claiming ineffective assistance of counsel. *Kane*, 436 N.W.2d at 627. We therefore conclude that appellate counsel's conduct did not fall outside a normal range of competency.

■ Furthermore, we do not believe that Jones has shown prejudice due to his appellate counsels' conduct because we do not believe that the conduct of Jones' trial counsel in failing to obtain a continuance of Jones' trial fell outside a normal range of competency. Jones' trial counsel testified at the postconviction hearing that the only information he had regarding the subject matter of Elam's possible testimony was what Elam's attorney told him, and that all of this information was included in the motion to continue and supporting affidavit. *See* Iowa R.Civ.P. 182, 183. We agree with the State that Jones' trial counsel could not supply the court with information that he did not have, nor could he force

Elam to provide him with more information, for the simple reason that Elam had invoked his fifth amendment privilege against self-incrimination.

■ Finally, we conclude that Jones has failed to demonstrate prejudice in appellate counsel's decision not to raise the issue of ineffective assistance of trial counsel because an aider and abetter such as Jones does not have a right to be tried after a principal such as Elam. We discuss this issue in the subsequent division of this opinion.

IV. *Ineffective assistance of appellate counsel.* Jones next contends that he is entitled to a new trial due to ineffective assistance of appellate counsel. He argues that his appellate attorneys failed in an essential duty because they did not consider raising, on Jones' direct appeal from his criminal trial, the issue of whether an aider and abetter such as Jones has the right to be tried after a principal such as Elam. Jones also contends that his constitutional right to compel witnesses on his behalf, guaranteed to him by the sixth amendment to the United States Constitution, entitled him to compel Elam's testimony despite Elam's invocation of his fifth amendment right against self-incrimination.

A. Because Jones did not advance these contentions at his original criminal trial, nor on his direct appeal therefrom, he ordinarily would be deemed to have waived them, thus precluding our consideration of them in the present postconviction relief proceeding. *Washington*, 304 N.W.2d at 235. As stated above, however, an applicant such as Jones may raise contentions for the first time in a postconviction relief proceeding if he shows "sufficient reason" for having not raised them at trial or on direct appeal, and actual prejudice resulting therefrom. *Polly*, 355 N.W.2d at 855–56. Although Jones' present claim of ineffective assistance of appellate counsel may provide "sufficient reason" to permit him to raise his contentions for the first time in this postconviction proceeding, we do not believe Jones has demonstrated actual prejudice resulting from the conduct of his appellate counsel. This is because we con-

clude (1) that an aider and abetter is not entitled to be tried after a principal; and (2) that a defendant's right to compulsory process does not include the right to compel a witness to waive his fifth amendment right against self-incrimination.

B. Jones argues that, because he was convicted of aiding and abetting Elam in the slaying of Chris Stevens, whereas Elam was convicted of first-degree murder, Jones was entitled to be tried after Elam. Jones therefore believes that an aider and abetter must be tried only after the principal has been tried.

Our statutory law, however, provides that an aider or abetter be treated as a principal for all purposes:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part he or she had in it, and does not depend upon the degree of another person's guilt.

Iowa Code § 703.1 (1981).

It was the rule under the common law that an aider and abetter could not, unless he consented, be tried before the principal, and the conviction of the principal was necessary before the conviction of an aider or abetter could be sustained. *State v. Wilson*, 235 Iowa 538, 540–41, 17 N.W.2d 138, 140 (1945); *State v. Lee*, 91 Iowa 499, 501, 60 N.W. 119, 120 (1894); 21 Am.Jur.2d *Criminal Law*, § 175, at 332 (1981). However, this court has specifically stated that, because the aider and abetter statute requires that aiders and abetters be treated as principals, the common law distinction does not apply. *Lee*, 91 Iowa at 501, 60 N.W. at 120 (common law rule has no application under Iowa's aider and abetter statute because that statute makes the crime of an accessory substantive and independent).

Other authorities have recognized the general rule that, under a statute, such as section 703.1, providing that an aider and abetter may be prosecuted and punished as if he were the principal, an aider or abetter may be tried before the principal, and a conviction may be sustained without showing the conviction of the principal. *See* 21 Am.Jur.2d *Criminal Law*, § 175, at 332 (1981). This rule applies under federal statutory law, which also classifies all participants in conduct violating a federal criminal statute as principals. *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (defendant accused of aiding and abetting in commission of a federal offense may properly be convicted even after the named principal has been acquitted) (citing *Lee*, 91 Iowa at 501–02, 60 N.W. at 120).

Based upon the foregoing authority, we hold that Jones has not shown actual prejudice concerning the failure of his appellate counsel to raise the issue of whether he was entitled to be tried after Elam. This is because we conclude that an aider or abetter has no right to be tried subsequent to the trial of a named principal.

C. Jones also contends that his constitutional right to compel witnesses on his behalf, guaranteed to him by the sixth amendment, entitled him to compel Elam's testimony despite Elam's invocation of his fifth amendment privilege against self-incrimination. We disagree.

We have recognized the well-established principle that "when a witness' privilege against self-incrimination under the Fifth Amendment collides with an accused's right to compulsory process under the Sixth Amendment, the latter must give way." *State v. McDowell*, 247 N.W.2d 499, 500–01 (Iowa 1976); *Washington v. Texas*, 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019, 1025, n. 21 (1967); 21A Am.Jur.2d *Criminal Law*, § 718, at 142 (1981). Thus, when the fifth amendment and sixth amendment guarantees collide, the sixth amendment right must yield, because to "require one defendant to incriminate himself in order to afford help to another would be both unwise and unrealistic." *State v. Parham*, 220 N.W.2d 623, 629 (Iowa 1974).

Because Jones did not have the right to compel Elam's testimony, we hold that Jones has failed to show actual prejudice from the failure of his appellate counsel to raise this issue on direct appeal.

■ V. *Claim of newly discovered evidence.* Jones argues that he is entitled to a new trial due to newly discovered evidence. *See* Iowa Code § 663A.2(4). The "newly discovered evidence" which Jones identifies is the testimony of Elam given at Jones' postconviction hearing. Jones contends that, because Elam has been tried and has exhausted his appeals and other remedies, and because he no longer asserts his fifth amendment privilege against self-incrimination, Elam's testimony is "newly discovered." We disagree.

■ In order for a defendant to prevail on a motion for new trial based on a claim of newly discovered evidence, he must show: (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial. *State v. Allen,* 348 N.W.2d 243, 246 (Iowa 1984). We have specifically held that the potentially exculpatory testimony of a codefendant, who, like Elam, had earlier exercised his fifth amendment privilege against self-incrimination at a defendant's criminal trial, where that testimony was known to the defendant, may not be considered newly discovered evidence so as to warrant the grant of a new trial. *Jones v. Scurr,* 316 N.W.2d 905 (Iowa 1982); *see also* 58 Am.Jur.2d *New Trial,* § 467, at 435–36 (1989). We stated in *Scurr* that

> [I]t is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his co-defendant by the filing of a recanting affidavit. In a case such as the present one, the already convicted codefendants have nothing to lose by making statements that exculpate defendant. We find that such statements should not automatically be allowed to interfere with the finality of

the underlying trial. Otherwise, the underlying trial would always be tentative unless all codefendants and alleged accomplices testified fully at that trial.

316 N.W.2d at 910 (citations omitted).

Jones presents precisely the same situation as that addressed in *Scurr.* Based upon our review of the record, we do not believe that it can be said that Jones did not know of the general nature of the testimony Elam would later provide; as stated above, Jones attempted to depose Elam, and also attempted to have his own trial continued until after Elam's trial, all in an effort to obtain Elam's testimony. Under *Scurr,* the mere fact that Elam earlier claimed his fifth amendment privilege against self-incrimination does not mean that his later surrender of that privilege rises to the level of newly discovered evidence.

Additionally, we do not believe that Elam's testimony at Jones' postconviction hearing in support of Jones' theory of self-defense otherwise constitutes newly discovered evidence because we believe that this testimony was merely cumulative and hence would not probably change the result of Jones' trial. At his original criminal trial, Jones presented the testimony of two other witnesses that supported the theory of both Jones and Elam that Elam had acted in self-defense when he shot Chris Stevens. We do not believe that Elam's testimony would add anything to the testimony of these two other witnesses at a new criminal trial for Jones.

■ VI. *Claim of prosecutorial misconduct.* Jones' final contention is that he is entitled to a new trial due to prosecutorial misconduct. His position is that the prosecution in his original criminal trial committed misconduct by utilizing the allegedly perjured testimony of Tanya Coleman when the prosecution either knew or should have known that the testimony was perjured. Jones bases this claim upon the fact that Coleman testified at Jones' criminal trial that she was an eyewitness to the shooting of Chris Stevens, but then later recanted that testimony during Elam's postconviction relief proceedings, stating

that the reason she testified as she did at Jones' trial was due to police authorities pressuring her.[2]

■ We have held that it is a violation of due process for the prosecution to suppress evidence favorable to an accused if that evidence is material to guilt or punishment. *State v. Todden*, 364 N.W.2d 195, 198 (Iowa 1985); *see also Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). This rule applies in situations where evidence is discovered after trial that the prosecution's case included perjured testimony of which the prosecution was aware or should have been aware. *Todden*, 364 N.W.2d at 198. In order to prevail on this ground, a defendant must prove: (1) that the prosecution either introduced or failed to correct false testimony; (2) that the false or perjured testimony was given at trial; (3) that the prosecution knew the perjured testimony was false; (4) that the testimony was "material"; and (5) that the defendant has not waived the claim by failing to raise it at trial if he had reason to know of the falsity of the subject testimony. *Id.* at 198–99.

■ We agree with the State that Jones' entire claim is based upon an assumption that Coleman's trial testimony was in fact false. However, this mere assumption falls far short of the affirmative proof required to merit a new trial. We have repeatedly held that a witness' recantation testimony, such as that advanced by Coleman at Elam's postconviction hearing, is looked upon with the utmost suspicion. *State v. Folck*, 325 N.W.2d 368, 377 (Iowa 1982); *State v. Frank*, 298 N.W.2d 324, 328–29 (Iowa 1980), *cert. denied*, 493 U.S. 1027, 110 S.Ct. 736, 107 L.Ed.2d 754 (1990); *State v. Taylor*, 287 N.W.2d 576, 578 (Iowa 1980); *State v. Compiano*, 261 Iowa 509, 154 N.W.2d 845 (1967). The postconviction court is certainly not required to believe the recantation, and has wide discretion to view the matter in its entirety to determine if a defendant had a fair criminal trial and if a new trial would likely produce a different result. *Taylor*, 287 N.W.2d at 578. A

reviewing court will not interfere unless there is a clear abuse of discretion. *Id.*

Jones points to nothing in the record, aside from Coleman's own equivocal testimony from Elam's postconviction case, to support his claim that Coleman's trial testimony was perjured. As the postconviction court noted, Coleman stated that she had witnessed the shooting, consistently maintaining this position during multiple pretrial statements to police, during her sworn deposition, and during her testimony at two criminal jury trials. Based upon this record, we cannot say that the postconviction court abused its wide discretion in finding Coleman's subsequent recantation "incredible, unreliable and unacceptable."

Because we conclude that Jones has not carried his burden to show that Coleman's testimony at his criminal trial was in fact perjured, we hold that Jones' claim that the prosecution "knew or should have known" of Coleman's alleged perjury likewise must fail. Accordingly, we affirm the postconviction court's denial of Jones' application as to this assignment.

VII. *Disposition.* In sum, we hold that Jones is not entitled to a second postconviction hearing due to his claimed incompetency at the time of his original hearing. We also affirm the postconviction court's denial of Jones' application for postconviction relief as to all issues raised.

AFFIRMED.

**2.** Coleman did not testify at Jones' postconviction hearing.