# IN THE COURT OF APPEALS OF IOWA

No. 14-1592
Filed April 27, 2016

**LHA SOUTHIDETH-WHITEN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

Lha Southideth-Whiten appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

John Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., Mullins, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

Lha Southideth-Whiten (Whiten) appeals the district court's denial of his application for postconviction relief from his convictions on first-degree robbery, on two counts of delivery of a controlled substance, and of being a felon in possession of a firearm. Whiten contends there exists newly discovered evidence in this matter. His pro se brief also asserts he received ineffective assistance of counsel related to the failure to procure the newly discovered evidence. We affirm the judgment of the district court.

## I. Background Facts and Proceedings

In July 2011, Whiten participated in two controlled buys of methamphetamine with a confidential informant, Benji Boutchee. On July 27, 2011, the two were scheduled to meet for a third buy; however, during the meeting at Whiten's apartment, Boutchee was robbed of the $505 he was supposed to use for the drug purchase. The police obtained a search warrant for the apartment. The search yielded numerous items of evidence, including the aforementioned $505 and a pistol. In addition to Whiten, Lucas Huff, Randy Ellers, Jackie Reavis, and Danielle Sparks were present in the apartment when the search warrant was executed.

Boutchee testified at trial that when he arrived at the apartment on July 27, several people were there, but not Whiten. When Whiten arrived, he told Boutchee he had no drugs to sell him and demanded Boutchee give him his money. When Boutchee refused, the assembled group began beating him. Boutchee testified Whiten took a gun belonging to another person in the room and put it in Boutchee's mouth. Boutchee then threw the money at Whiten and

the others. Whiten left the apartment. The officers monitoring Boutchee, concerned they had lost contact with him, came to check the apartment under the guise of a noise complaint. The others in the apartment left, and Boutchee was able to leave soon thereafter.

An officer involved in executing the search warrant the next morning, James Ogle, testified he saw an arm come out of a window in Whiten's apartment and place a handgun on the roof next to an air conditioning unit.

Sparks testified she grabbed Boutchee by the throat during the incident at the apartment and "sat him on a couch." She said Boutchee was "smacked" a number of times by those in the apartment. She said either Reavis or Huff held a gun to Boutchee's head. She took the gun from that person, and Whiten eventually took it from her. She disputed Boutchee's statement that Whiten had placed a gun in Boutchee's mouth. She observed Whiten, when the search warrant was being executed, throw a gun "outside the bedroom window like by the air conditioner."

Whiten testified at the trial as well. He denied putting a gun in Boutchee's mouth, placing a gun outside the window of the apartment, or even living in the apartment. He confirmed Sparks took a gun from another person during the incident and that he took the gun from her and threw it on a couch. He testified he knew no one else in the apartment besides Sparks.

At the time of Whiten's trial, Huff was in jail awaiting his own trial on drug charges unrelated to the incidents described above. Whiten's attorney, Pamela Summers, contacted Huff's attorney, who informed her Huff would not be testifying at Whiten's trial.

Whiten was convicted of first-degree robbery, two counts of delivery of a controlled substance, and being a felon in possession of a firearm. Those convictions were affirmed on appeal.

Whiten filed an application for postconviction relief. Summers and Huff were deposed, and their depositions were offered in lieu of live testimony at the hearing on postconviction relief. In Huff's deposition, he testified he was at the apartment that day. He was in the bathroom when he heard "a bunch of commotion." He exited the bathroom to see "a big old huddle" of people in the apartment, apparently fighting. He pulled out a pistol he was carrying, pointed it in the general direction of the "huddle," and began screaming for everyone to get down. He eventually calmed down and gave Sparks the gun; she returned it to him shortly thereafter. When officers came to the apartment to check on Boutchee, Huff left the apartment. Huff claimed he returned to the apartment later, but before doing so, he left the gun in an alley. The gun he used to point at the crowd was not in the apartment when the police executed the search warrant.

Huff offered the following testimony in his deposition: His lawyer, Wendy Samuelson, contacted him to discuss Summers's request for Huff to testify at trial. He told Samuelson he would testify. A detective approached him after that conversation about testifying against Whiten in exchange for a reduction in his charges and assistance with a request for probation. He told the detective he would not testify against Whiten. Huff later learned from Samuelson she had declined Summers's request because, according to Huff, she did not want him to be implicated in a robbery. Huff testified that was contrary to his wishes. Huff testified he understood that based on his prior felony convictions, his version of

events would potentially subject him to being charged as a felon in possession of a firearm and have that sentence enhanced to up to fifteen years as a habitual offender.

Summers testified in her deposition she did not remember her efforts to contact Huff.  She did say, however, that if someone were present in the apartment during the execution of the warrant, and that person were charged, she would have needed to go through that person's attorney, who may or may not have granted Summers access to the potential witness.

Whiten advanced two theories in seeking postconviction relief: 1) Summers was ineffective in not procuring Huff's potentially exculpatory testimony for use at trial, and 2) Huff's testimony constitutes newly discovered evidence. The district court rejected both claims.  Whiten now appeals.

## II. Scope of Review

Postconviction proceedings are law actions reviewed for errors of law. *Bugley v. State*, 596 N.W.2d 893, 895 (Iowa 1999).  We review ineffective-assistance claims de novo.  *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). In addressing questions of ineffective assistance of counsel, we make our own independent evaluation of the totality of the circumstances.  *Nims v. State*, 401 N.W.2d 231, 233 (Iowa 1986).

## III. Newly Discovered Evidence

Whiten seeks relief pursuant to Iowa Code section 822.2(1)(d) (2013) claiming "[t]here exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of

justice." He claims Huff's testimony is newly discovered evidence. In order to prevail, he must show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991). The Iowa Supreme Court has also recognized that "motions for new trial on the basis of newly discovered evidence should be looked upon with disfavor and granted sparingly." *Whitsel v. State*, 525 N.W.2d 860, 863 (Iowa 1994) (citation omitted).

In his pro se brief, Whiten mentions, in addition to Huff's testimony, the potential testimony of Ellers and Reavis. The district court did not address the testimony of Ellers and Reavis. Error has not been preserved on that issue. We, therefore, address only the issue of Huff's testimony.

Whiten failed to meet his burden on this argument. On the third and fourth prongs of the test, especially, we are skeptical of his claim. The third prong provides the evidence must be material and not merely cumulative or impeaching. Huff would have testified he was in the apartment on the day in question. Another witness so testified. Huff would have testified he had a gun. Several witnesses testified to another man in the apartment having a gun; one of those narrowed the identity of the man down to either Reavis or Huff. A witness testified she did not see Whiten put a gun in Boutchee's mouth (to which Huff's testimony would be merely cumulative); Boutchee testified it was Whiten (to which Huff's testimony would be impeaching). From these and other examples, we conclude Huff's potential testimony was merely cumulative and impeaching.

We also doubt Huff's testimony would have changed the result of the trial. We note the district court's finding Huff's deposition testimony lacked credibility. *See Harrington v. State*, 659 N.W.2d 509, 517 (Iowa 2003) (finding witness recantations were not credible and did not constitute newly discovered evidence). We give deference to those findings. *See, e.g.*, *State v. Leaton*, 836 N.W.2d 673, 676 (Iowa Ct. App. 2013). We are therefore unconvinced Huff's incredible testimony would have changed the trial's outcome.

## IV. Ineffective Assistance of Counsel

Huff's appellate counsel withdrew the ineffective assistance of counsel in his appellate brief; however, Whitten, in his pro se brief, alleges counsel was ineffective. An applicant for postconviction relief who claims ineffective assistance of counsel must prove two elements: (1) counsel failed to perform an essential duty, and (2) this failure resulted in prejudice. *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012). The ultimate test is whether under the entire record and totality of the circumstances counsel's performance was within the normal range of competency. *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998). Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Jones*, 479 N.W.2d at 272. There is a strong presumption of counsel's competence. *Id.*

Here we cannot conclude Summers was ineffective for failing to procure Huff's testimony. Summers did not fail to perform an essential duty. Even accepting Whiten's version of events, Summers contacted Samuelson to discuss Huff's testimony and was informed by Samuelson Huff would not be testifying. Summers, as an experienced criminal defense attorney, would have known the

basis for Samuelson's denial of access, even if that reason was not explicitly stated. Even if Huff later chose to waive his Fifth Amendment rights it would be an unusual decision that Summers could not have reasonably anticipated. What with the benefit of hindsight may appear to be improvident trial strategy on her part was, at the time, adequate diligence. Her performance was within the normal range of competency.

## V. Conclusion

Huff's potential testimony is not newly discovered evidence. Whiten's counsel was not ineffective. We affirm the judgment of the district court.

**AFFIRMED.**