# IN THE COURT OF APPEALS OF IOWA

No. 19-0083
Filed May 13, 2020

**RICHARD CORTEZ,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Floyd County, Colleen Weiland, Judge.

Richard Cortez appeals the denial of his application for postconviction relief. **AFFIRMED.**

Jamie Hunter of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VAITHESWARAN, Presiding Judge.**

Several people were stabbed with a knife following an altercation at a bar in Charles City, Iowa. One of the people died of his injuries. Another injured his arm. The third, who identified himself as Cyrus Riley, sustained injuries to his elbow and leg. The State charged Richard Cortez with several crimes arising from the fracas. A jury found him guilty of second-degree murder and two counts of willful injury causing serious injury. This appeal from the denial of Cortez's application for postconviction relief centers on the true identity of Cyrus Riley.

## I. Background Proceedings

After trial but before sentencing, the State notified Cortez that Cyrus Riley was actually Barry Holden. Cortez moved for a new trial, asserting the evidence was newly discovered. The district court denied the motion, reasoning the evidence likely would not have changed the result. *See Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991) (requiring proof of four elements on a newly-discovered-evidence claim, including that "the evidence probably would have changed the result of the trial").

Cortez filed a direct appeal. *See State v. Cortez*, No. 09-1362, 2010 WL 3894443 (Iowa Ct. App. Oct. 6, 2010). He argued "the trial court erred and deprived him of due process when it failed to grant him a new trial" following the discovery of Riley's true identity. He raised the due process issue under an ineffective-assistance-of-counsel rubric. *Id.* at *6*. Like the trial court, we applied the newly-discovered-evidence standard. We reasoned that Cortez's "due process" claims of prosecutorial misconduct and suppression of evidence under *Brady v. Maryland*, 373 U.S. 83, 86–87 (1963), were subsumed within the claim of

newly discovered evidence. *Id.* at *7. We concluded there was no proof that "had the jury received the additional evidence that Riley/Holden was using an assumed name and had prior felony convictions, the jury would have ignored Riley/Holden's testimony of his observations, or the observations of other witnesses." *Id.* at *9.[1] We also concluded trial counsel did not breach an essential duty in failing to raise a due process claim, given the absence of "clearly established state or federal law on whether the unintentional use of perjured testimony violates due process." *Id.* at *7. We affirmed the jury's findings of guilt on the second-degree murder charge and one of the willful injury charges. *Id.* at *12. We reversed the other willful injury count and remanded with instructions to amend the judgment of conviction to willful injury causing bodily injury. *Id.*

Cortez filed a postconviction-relief application. After several years, the application was amended to allege claims relating to the belated discovery of Riley's true identity. Following a hearing, the postconviction court determined "[t]he issue of whether the introduction of witness Holden's perjured testimony violated [Cortez's] due process rights [was] already . . . decided against him by the Iowa Court of Appeals on direct appeal" and "his claim of ineffective assistance of trial counsel [was] decided against him by the same court." In the court's view, Cortez sought "to revisit the issue by approaching it in a different way," but "the result [was] the same." The court concluded, "The evidence [did] not support the proposition that the State knew Holden's identity or intentionally withheld it from

---

[1] We noted, however, that the record failed to disclose "the type or number of felonies of which Holden has been convicted." *Cortez*, 2010 WL 3894443 at *6 n.3.

defense counsel" and Cortez failed to show "a reasonable probability of a different result had Holden's identity been ascertained before trial." The court denied the postconviction-relief application.

## II. Analysis

### A. Relitigation

In this appeal, Cortez argues his "due process rights were violated by the State's failure to disclose exculpatory information regarding the identity of a key witness and its introduction of perjured testimony." As a preliminary matter, we must decide whether the issue was decided on direct appeal because, if it was, Cortez was foreclosed from relitigating it in the postconviction-relief proceeding. *See Holmes v. State*, 775 N.W.2d 733, 735 (Iowa Ct. App. 2009) ("Holmes cannot now relitigate issues decided adversely to him on direct appeal.").

The only due process issue we decided on direct appeal was whether the State's unintentional use of perjured testimony violated due process. Cortez's current appeal implicates the two questions we bypassed on direct appeal: (1) whether the State suppressed evidence in violation of *Brady*, and (2) whether the prosecutor committed misconduct, an issue that presupposes intentional rather than unintentional conduct. *See State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (distinguishing between prosecutorial misconduct and prosecutorial error); *see also State v. Leedom*, 938 N.W.2d 177, 192 n.3 (Iowa 2020) (same); *State v. Coleman*, 907 N.W.2d 124, 139 (Iowa 2018) (same). Because we did not resolve those issues, we conclude Cortez could litigate them at the postconviction-relief hearing. We will proceed to the merits of both claims.

1.      *Brady* violation

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "To show a *Brady* violation, [an applicant] must prove by a preponderance of the evidence (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *Moon v. State*, 911 N.W.2d 137, 145 (Iowa 2018) (internal quotations and citations omitted).

Cortez asserts the "multiple [department of criminal investigation (DCI)] agents working on this case possessed evidence favorable to [him]; specifically, that a key witness was lying about his identity," and they withheld that "favorable evidence" from him until after trial. The State counters that Cortez failed to prove "any investigators had actual knowledge that Riley/Holden had been lying about his identity." On our de novo review of this constitutional issue, we agree with the State.

"Nondisclosure of evidence is the touchstone of suppression," and "[t]he State has a duty to disclose exculpatory evidence regardless of whether the accused requests it." *Aguilera v. State*, 807 N.W.2d 249, 252 (Iowa 2011). But the State could not disclose what it did not know, and Cortez's attorney conceded the State did not know of Riley's true identity until after trial. Specifically, counsel informed the sentencing court that "to our knowledge the defense, and I believe the State, no one knew that [Riley] was falsifying his name at that point."

Nor did the State have pretrial information to glean Riley's true identity. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (noting the "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). Although two witnesses referred to a man named "Barry," neither identified him as "Barry Holden." And Holden identified himself as Cyrus Riley in hospital records documenting his injuries and to law enforcement officers.

The only official indication that the name might not be correct came in a laboratory phone log prepared before trial. That log, documenting a call from a DCI special agent to an analyst, stated, "Cyrus is not his real name." The analyst testified she was told it "was an assumed name or something like that." But a finger print analysis conducted by the DCI in the wake of the disclosure failed to uncover Riley's true identity. According to the fingerprint analyst, he "didn't find the fingers [he] was searching" for.

Notably, Cortez's attorney was given access to the DCI file. *See Aguilera*, 807 N.W.2d at 253 ("[A]ccess to police reports, as opposed to mere knowledge of the reports, provides essential facts and a 'range and detail of information necessary to fully understand the implications of the police investigation' that oral disclosure of the reports cannot provide." (citation omitted)). At the postconviction hearing, counsel testified he was sure he read the DCI investigation report "[p]robably a number of times." He assumed Riley "was telling [him] the truth" about his identity and "throughout the entire investigation as far as [he] understood it and the police understood it and the county attorney understood it that that's what his name was." He testified Riley "had all of us fooled."

Because Riley's true identity was not known by the State before or during trial despite efforts to verify it, the information could not have been suppressed. We conclude the *Brady* claim fails on this ground.

2.    Prosecutorial Misconduct

We turn to the prosecutorial misconduct claim. Although Cortez couches it as a due process claim and there are certainly due process implications with the introduction of perjured testimony, our review of a district court ruling on the subject is for an abuse of discretion. *See Leedom*, 938 N.W.2d at 185.

As mentioned, the supreme court has distinguished between prosecutorial misconduct and prosecutorial error. *See Schlitter,* 881 N.W.2d at 394. "To prove prosecutorial misconduct, the defendant must show the prosecutor acted with reckless disregard . . . or intentionally made statements in violation of an obvious obligation, legal standard, or applicable rule that went beyond an exercise of poor judgment." *Leedom*, 938 N.W.2d at 192 (alteration in original) (citation omitted). Prosecutorial error, in contrast, "is based on human error or the exercise of poor judgment." *Id.* at n.3 (citation omitted). In his postconviction testimony, Cortez's attorney essentially conceded the prosecutor's conduct as it related to Riley/Holden was neither intentional nor reckless. Accordingly, Cortez failed to establish prosecutorial misconduct. We discern no abuse of discretion in the postconviction court's denial of the claim.

### B.    Ineffective-Assistance-of-Counsel Claims

Cortez contends his trial attorney was ineffective in failing to conduct a "meaningful investigation into Cyrus Riley." Our discussion above essentially resolves the issue. We specifically highlight counsel's review of the DCI file and

his postconviction testimony that he found nothing to suggest Riley was not who he said he was. And to the extent Cortez believes Holden's felonies would have provided valuable fodder for impeachment, his attorney testified, "I didn't know what they were. No one knew what they were. The [S]tate couldn't even come up with them, if I remember right." But, even without his criminal record, counsel effectively impeached Riley by vigorously cross-examining him about discrepancies between his trial and deposition testimony. On our de novo review of the trial and postconviction records, we conclude counsel did not perform deficiently in failing to investigate Riley/Holden further. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In a related vein, Cortez contends direct appeal counsel was ineffective in failing to supplement the record on the Riley/Holden issue. Cortez was given an opportunity to do just that at the postconviction hearing. We have relied on the expanded record in resolving the issues relating to Riley's true identity. Accordingly, the state of the record on direct appeal is essentially a moot issue.

Cortez also contends his trial attorney was ineffective in failing to "introduce expert testimony or otherwise challenge the DNA, knife, wound, and crime scene." Counsel effectively cross-examined the State's witnesses on the issues of import. For example, he asked the State medical examiner about the thickness of the blade and elicited concessions that blades other than the type carried by Cortez could have inflicted the wounds. As for his failure to delve into "touch DNA" on the knife handle to determine whether people other than Cortez had used the knife, he testified he did not do so "[f]or fear of what [he] might find out." He said, "sometimes you don't want an answer, and that would be a good one when I didn't

have an answer and I was satisfied with [Cortez's] DNA not being on the knife." Turning to counsel's investigation of the crime scene, he testified he went to the bar "[s]o that [he] would have a better idea of the distance between the bathroom and where the attack took place" and he reviewed the reports, interviews, and photos that were provided. Finally, we are not persuaded by Cortez's assertion that his attorney should have challenged the chain of custody of the knife. Although his postconviction expert testified "[t]hey should have been able to establish this chain of custody issue," he also acknowledged "[t]he knife was in the defendant's hand" and there was "no discrepancy" that the knife was the defendant's. On our de novo review, we conclude counsel did not breach an essential duty in failing to call an expert witness or pursue the cited issues.

We affirm the denial of Cortez's postconviction-relief application.

**AFFIRMED.**