# IN THE COURT OF APPEALS OF IOWA

No. 20-0383
Filed June 16, 2021

**ANTONIO LAMAR HUDSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Patrick R. Grady, Judge.

Antonio Hudson appeals the denial of his application for postconviction relief. **AFFIRMED.**

Anne K. Wilson of Viner Law Firm, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Doyle, P.J. and Mullins and May, JJ.

**MULLINS, Judge.**

Antonio Hudson appeals the denial of his application for postconviction relief (PCR). He argues the court erred in denying his claim his counsel in the underlying criminal proceeding rendered ineffective assistance in allowing him to plead guilty to third-degree sexual abuse, first-degree burglary, and going armed with intent. He claims his pleas were not entered knowingly and intelligently because "he was not fully aware of the consequences of his plea[s]" due to his "low IQ and other disorders that would affect his decision making."

## I.    Background

Hudson was criminally charged in March 2011. In May, the court ordered that Dr. Frank Gersh conduct an evaluation of Hudson. In his ensuring report, Dr. Gersh explained Hudson met the criteria for undifferentiated schizophrenia and exhibited paranoid behavior. Dr. Gersh reported concerns for Hudson's competency to stand trial, noting "[h]e needs medical treatment of the schizophrenia before he can present himself in court" and "instruction on courtroom procedure, the roles of important people in the courtroom and the important issues of the legal case against him." Dr. Gersh recommended "further evaluation and treatment." The court stayed the proceedings and ordered further evaluation and treatment.

In July, Hudson moved for a competency hearing. In response, the court ordered him to undergo a competency evaluation. Dr. Timothy Kockler completed a competency evaluation in November. Dr. Kockler estimated Hudson's "intellectual ability . . . to be in the below average to average range" and observed his "[t]hought processes were intact and goal directed" with "no evidence of

delusions." Hudson's full scale IQ score was eighty-six, which fell in the low-average range. Dr. Kockler determined Hudson to be competent to stand trial.

A competency hearing was held in April 2012, at which Hudson withdrew his challenge to his competency to stand trial. Ultimately, in December, Hudson entered guilty pleas. At the plea hearing, the court discussed with Hudson the nature of the charges and their penalties as well as the rights he would be giving up by pleading guilty, to all of which Hudson acknowledged his understanding. While Hudson did request some brief sidebars with his attorney, Hudson stated he had sufficient time to discuss the matter with his counsel, and we was satisfied with his representation. The court accepted Hudson's guilty pleas and advised him of his obligation to file a motion in arrest of judgment in order to challenge them. Sentence was imposed in February 2013.

Hudson filed his PCR application in January 2015. He claimed his criminal counsel provided ineffective assistance because Hudson "was mentally incompetent before and after conviction." In his pre-trial brief, Hudson argued his pleas should be set aside due to "his low mental health, schizophrenia, the effect of medications, and pressure and promises by defense counsel inducing him to plead guilty."

The matter proceeded to trial in October 2019, about a year before which Dr. Mark Mills conducted a psychiatric assessment of Hudson. He submitted a report shortly before trial. Based on his assessment, Dr. Mills opined, due to his cognitive limitations, "Mr. Hudson appears to have lacked the intellectual ability to appreciate the implications of his plea." Dr. Mills concluded as follows:

Overall, I believe the following: first, Mr. Hudson had a long history of schizophrenia, repeatedly confirmed by his prison physicians and treated with antipsychotic medication several years before he entered his plea. Second, that Mr. Hudson has significant cognitive limitations as revealed in his comprehensive testing with Dr. Kockler and in his bizarre responses on his recent MMPI and his conversation with me. Third, those cognitive limitations may reflect the course of his schizophrenia or something preexisting (which cannot be determined without detailed access to his school transcripts). Finally, the combination of cognitive impairment and significant sedation provide Mr. Hudson's claim a credible medical basis: he states that he could not understand what he was agreeing to and this appears to be accurate.

However, Dr. Mills went on to acknowledge Dr. Kockler's 2011 evaluation was "clearly a competent assessment." And Dr. Mills testified cognitive decline is a routine part of schizophrenia as the years pass following diagnosis. He agreed the cognitive limitations Hudson exhibited relative to the 2018 assessment may not have been exhibited to Dr. Kockler in 2011. He also agreed the report following Dr. Kockler's testing simply suggested "some mild issues."

Medical documentation concerning his condition when he was sent to the medical classification center following the imposition of sentence notes Hudson was "currently very healthy and his only current problems are schizophrenia and asthma," and he reported his medications for those issues "are working well for him." Hudson's mother testified Hudson's criminal attorney advised her pleading guilty was Hudson's best option. Hudson testified to the same, adding his attorney advised him he would out of prison within five years if he pled guilty, but he would serve eighty-eight years if he went to trial. Hudson's criminal attorney testified Hudson initially expressed concerns about his competency, counsel pursued the issue, but it turned out to be a non-issue. Counsel testified he never advised Hudson he would only serve only five more years if he pled guilty. He stated, "I

never would have stated a specific expectation . . . because, quite frankly, outside of the correctional system I don't think anyone can give an accurate estimation of how long people are going to serve." Counsel had no concerns regarding Hudson's understanding of the charges or proceedings.

Following trial, the district court concluded, among other things, Hudson failed to establish he would have been found incompetent if his attorney pursued the issue further. The court therefore denied Hudson's ineffective-assistance claim and dismissed his PCR application. Hudson appeals.

## II. Standard of Review

Appellate review of PCR proceedings is typically for correction of errors at law, but where claims of ineffective assistance of counsel are forwarded, our review is de novo. *See Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017). Because Hudson's claim concerns the effectiveness of trial counsel, he must prove by a preponderance of the evidence that (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

## III. Analysis

Hudson argues counsel was ineffective in allowing him to plead guilty, claiming his pleas were not entered knowingly and intelligently because "he was not fully aware of the consequences of his plea[s]." Hudson first asserts the fact that he had off-the-record discussions with his counsel at the plea hearing

indicates he was not aware of the consequences of his plea. But our review of the record discloses the purpose of those discussions was for counsel to clear up questions Hudson had, and those discussions served their purpose. Hudson next argues his plea was not entered knowingly and intelligently because of his "low IQ and other disorders that would affect his decision making"; he claims he was mentally incompetent, so his plea could not be knowing and intelligent.

The mere presence of mental illness does not equate to incompetency. *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991). The claim that Hudson was mentally incompetent at the time of his plea is directly contradicted by the record of the plea proceeding. When such is the case, "the applicant bears a special burden that the record is inadequate." *Arnold v. State*, 540 N.W.2d 243, 246 (Iowa 1995). Upon our de novo review, we conclude Hudson did not meet this burden. First, we find Dr. Kockler's opinion as to Hudson's functioning more reliable than Dr. Mills's opinion, especially so in light of the fact that Dr. Mills's assessment was completed several years after the plea was entered, his testimony that cognitive decline is a routine part of schizophrenia as the years pass following diagnosis, and his agreement the cognitive limitations Hudson exhibited relative to the 2018 assessment may not have been exhibited to Dr. Kockler in 2011. At the plea hearing, Hudson did not exhibit any irrational behavior or demeanor that suggested a competency problem, and the court and parties had received a medical opinion that Hudson was competent. *Cf. Jones*, 479 N.W.2d at 265 (discussing factors on the issue of competency to stand trial). So we agree with the district court that counsel performed effectively and no prejudice resulted.

We affirm the denial of Hudson's PCR application.

**AFFIRMED.**