# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1747
Filed February 25, 2026

———————————

**Caleb Dormire,**
Applicant–Appellant,
v.
**State of Iowa,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Scott County,
The Honorable Tamra Roberts, Judge.

———————————

**AFFIRMED**

———————————

Tiffany Kragnes, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Buller, P.J., Langholz, J., and Vogel, S.J.
Opinion by Buller, P.J.

**BULLER, Presiding Judge.**

Caleb Dormire appeals the denial of postconviction relief following his conviction for sexual abuse in the second degree. He argues his trial counsel was ineffective and claims he has newly discovered evidence. Because we agree with the ruling denying postconviction relief, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

A jury found Dormire guilty based largely on the victim's testimony that Dormire sexually assaulted her in his home after threatening her with a steak knife. When questioned by police, Dormire initially denied having sexual contact with the victim, then changed his story to claim the sex acts were consensual. Testing by the State Crime Lab found Dormire's sperm on the victim's underwear and mixed DNA profiles consistent with Dormire's on vaginal swabs of the victim.

We affirmed Dormire's conviction on direct appeal. *See State v. Dormire*, No. 16-1747, 2018 WL 2085199, at *2–3 (Iowa Ct. App. May 2, 2018). Dormire then applied for postconviction relief, raising claims of ineffective assistance and newly discovered evidence. As pertinent to this appeal, Dormire claimed trial counsel should have called character witnesses and better advised him about whether to testify at trial. And his newly-discovered-evidence claim alleged the victim had made statements casting doubt on her testimony. In a thorough ruling, the postconviction court found none of these claims warranted relief. Dormire appeals.

## STANDARD OF REVIEW

We review the ineffective-assistance-of-counsel claims de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). And we review the

newly-discovered-evidence claim for correction of legal error. *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016).

## INEFFECTIVE ASSISTANCE

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A postconviction applicant must prove both (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *Id.* at 687–88, 694.

As to the first ineffective-assistance claim, the witnesses Dormire maintains should have been called would have essentially testified to his general good character or their belief he wouldn't commit a violent sex crime. Illustrative of the three, one witness—who did not know Dormire at the time of the offense—testified she got bad "vibes" from some people but not from Dormire, who she thought was "gentlemanlike." Dormire's trial attorney explained that, in his experience, this kind of witness holds little sway with juries and calling them risks opening the door to the State offering damning rebuttal evidence. Dormire's attorney also testified that Dormire agreed to his recommendation they not call character witnesses, and the court's colloquy with Dormire during the criminal trial confirmed he was an informed participant in that decision. The postconviction court concluded not calling these witnesses was a reasonable tactical judgment and that their testimony would not have changed the outcome at trial; we agree with both propositions. We also independently doubt the witnesses' testimony would have been admissible: general good-character evidence is not admissible to

3

defend against the crime of sexual abuse, and even pertinent character evidence requires extensive foundation. *See State v. Mummau*, No. 12-1082, 2013 WL 2145994, at *4–5 (Iowa Ct. App. May 15, 2013) (holding general good-character evidence is not admissible to defend against a rape charge, though evidence of non-aggression may be pertinent in some circumstances with sufficient foundation). Assuming without deciding that Dormire's knowing decision to not call these witnesses didn't waive this claim, we agree with the postconviction court's denial of relief on the merits.

Next, Dormire claims trial counsel ineffectively advised him regarding whether to testify. Trial counsel testified that he had concerns about potential inconsistencies between Dormire's trial testimony and earlier statements, and he worried that cross-examination could be disastrous because counsel thought Dormire wasn't taking the trial seriously. The court found counsel offered reasonable advice and concluded that Dormire's testimony would have added "very little" even if he had testified. And the court found that, as evidenced by a trial colloquy,[1] the decision whether to testify was ultimately made by Dormire and was knowing and voluntary. We agree with the postconviction court's analysis. Counsel provided competent advice to Dormire, who made the ultimate decision to not testify. Dormire's wish he made a different choice is no basis for relief.

## NEWLY DISCOVERED EVIDENCE

Last, Dormire argues he is owed a new trial based on newly discovered evidence. To succeed on this claim, Dormire had to prove the evidence

---

[1] To the extent Dormire asserts an in-court colloquy waiving his right to testify is not sufficient proof he made an informed decision, he cites no authority in support of such a claim, and we deem it waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). We also doubt it could be raised for the first time in postconviction relief. *See* Iowa Code § 822.8 (2020).

(1) was discovered after the verdict; (2) could not have been discovered earlier with due diligence; (3) was material and not merely cumulative or impeaching; and (4) probably would have changed the outcome at trial. *Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991). "The standard for whether the evidence probably would have changed the result of the trial is a high one because of the interest in bringing finality to criminal litigation." *More*, 880 N.W.2d at 499.

Dormire offered the testimony of Jordan Pierce, who was a prison inmate with Dormire but also knew him in the community before they were incarcerated. Pierce claimed that the victim made vague statements to him and others that cast doubt on or walked back her testimony that Dormire sexually assaulted her. Dormire also called the victim as a witness at the postconviction trial. She denied recanting her testimony to Pierce or anyone else. When asked if she "lie[d] about the sexual assault," she responded: "No."

The postconviction court "ha[d] major concerns about the credibility of . . . Pierce. Not only was his memory about the actual statements made vague, but his credibility as a witness is questionable." The court noted Pierce's criminal history and that he did not share the information at issue with anyone but Dormire until contacted by Dormire's investigator and legal team in the postconviction case. Bypassing the first three prongs of the *Jones* analysis, the court focused on the fourth and found that Pierce's testimony, even if admitted, would not have likely changed the outcome at trial. And the court went one step further to expressly find "it is extremely unlikely that Pierce's testimony would have changed the verdict."

We agree with the postconviction court's assessment. First, Pierce's testimony was largely inadmissible hearsay and hearsay within hearsay; at

most, the victim could've been asked to affirm or deny making such a statement and potentially been impeached. *See* Iowa Rs. Evid. 5.613, 5.801, 5.805. And second, we share the postconviction court's concerns about Pierce's credibility and believe a jury would react similarly. Our case law recognizes that "recantation testimony . . . is looked upon with the utmost suspicion." *Jones*, 479 N.W.2d at 275. And we think that is at least doubly true for the kind of denied-by-the-declarant, second-hand, vague recantation alleged here. We therefore affirm the denial of relief based on newly-discovered evidence.

**AFFIRMED.**