STATE of Iowa, Appellee,

v.

Kenneth Allen TODDEN, Appellant.

No. 83–489.

Supreme Court of Iowa.

March 20, 1985.

John P. Roehrick and Patricia M. Hulting of Roehrick & Hassel, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and James B. Smith, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

REYNOLDSON, Chief Justice.

Defendant Kenneth Allen Todden appeals from his murder conviction and from judgment denying him postconviction relief. He asserts a police officer committed perjury or unwittingly gave false testimony at his trial. We affirm his conviction and the postconviction court's ruling.

September 19, 1982, Orpha Clark was found murdered in her Urbandale home. She had been assaulted viciously, her night clothing torn away, and her throat cut with a large kitchen-type knife that was found lying across her face. Todden was charged with her murder and the case went to trial January 10, 1983.

The jury that convicted Todden of first-degree murder could have found the following facts from the record made at trial. Todden and Brad Cross jointly rented a Des Moines house. At the relevant times Michael Harris, a friend of Todden's, also was staying at this residence.

The victim's daughter, Joyce, broke a date with Harris on the evening of September 18, 1982, and spent most of the night with another person. Todden, Cross and Harris spent the evening drinking in a tavern. After they returned to their house at about 2:00 a.m. the next morning, Todden telephoned Mrs. Clark and had an angry conversation. Todden hung up, stating he was "going to go over there and … kill her." He left immediately on his motorcycle with Harris as a passenger.

These two went to the Clark home where Todden went to the door, knocked and asked for Joyce. Mrs. Clark told him to go away. Todden punched his gloved fist through glass in the door and entered. Harris, who was standing nearby, fled when he heard the sound of blows followed by a moaning. When Harris, on foot, arrived at the Todden-Cross house he was greeted by Todden, who had blood on his face, hands and coat. Later that morning Todden told Harris and Cross he had killed Mrs. Clark by cutting her throat with a cake knife. Todden wanted to bury his bloody clothing and a jewelry box he had taken from the Clark home in the yard. After Cross objected, these items were packaged in a paper bag that Todden and Harris threw in the river. Later, the bag and contents were retrieved by law officers.

September 21, 1982, agent Robert Pontious of the department of criminal investigation obtained information from Harris that resulted in a warrant to search the Todden-Cross residence. The next day this warrant was executed by Pontious and lieutenant Delbert King of the Urbandale police department. Pontious searched the only bedroom containing a water bed. At trial he described this room as Todden's room, a statement that was not contested. Pontious further testified he seized from this room a sock that other testimony disclosed was stained with blood of the victim's type. He also seized some Levi's from a chest of drawers in Todden's room.

When the search was completed, Pontious drew a sketch of the house that correctly located the bedroom containing the only water bed and chest of drawers in the house to be in the southeast corner of the structure. When, however, he was making out the evidence tags, a summary of the search activities, and an evidence receipt that was left on the premises, Pontious designated the room from which he seized the evidence as the southwest bedroom.

Todden was arrested September 22, 1982. His counsel, Gerald Ralph, made a general request for all *Brady* material, to which the DCI responded with an open file policy. The defense raised no issue of the above discrepancy relating to the bedroom from which the evidence was seized.

Todden was convicted of first-degree murder, largely on the strength of the testimony of Harris and Cross, and sentenced to life imprisonment. Further linking Todden to the crime was the bloodstained sock, and feathers found on and under the victim's body that matched the feathers from a torn sleeve in a down-filled coat, identified as Todden's, recovered from the river.

Todden filed timely notice of appeal. While the appeal was in progress, present counsel filed a motion for limited remand. We ordered the issues raised to be developed in a postconviction proceeding, with any appeal from that action to be consolidated with the direct appeal.

February 2, 1984, Todden filed an application for postconviction relief pursuant to Iowa Code chapter 663A. Upon the hearing Todden's chief contention was that Pontious committed perjury or at least testified falsely, thereby denying Todden due process.

The postconviction evidence disclosed that following Todden's conviction his mother, examining his effects, found the evidence receipt left by Pontious. She noticed the receipt indicated the property had been taken from the southwest bedroom and she knew her son had the southeast bedroom. Pontious testified his reference to the "southwest bedroom" was a scrivener's error, that the evidence in fact had been retrieved from the southeast bedroom, which, at the trial, he had correctly

identified and referred to as Todden's room. He said he was not aware of the discrepancy in the evidence tags, search summary and receipt until the county attorney brought it to his attention shortly before the postconviction hearing.

Lieutenant King testified he searched the south*west* bedroom, and that he found no evidence there. Attorney Ralph, Todden's criminal trial counsel, testified that he had not noticed the inconsistency although his notes also stated the jeans were located in the south*west* bedroom. He admitted his access to the state's files included a copy of the property receipt and the evidence tags. Counsel conceded he had discussed with Todden every item seized, in the context of whose room it had been found in. He opined that had he realized the written notations varied from the trial testimony he "would have made much ado of it."

The search warrant receipt begins with the blue jeans taken from the top of "Chest of Dr." The diagram of the house attached to the summary and the diagram used at trial placed the only "chest of drawers" in the south*east* bedroom. This inherent inconsistency in the documentary evidence apparently was overlooked by everyone during the trial.

The postconviction court found that Pontious merely had made a scrivener's error in labeling the documents in connection with the search, and denied relief. Todden filed timely appeal from that ruling, and by order we consolidated the two appeals. Todden's brief concedes there are no grounds for the direct appeal. Accordingly, there remains only an appeal from the postconviction ruling.

▬ Todden raises three issues that we discuss in the divisions that follow. Because this is a postconviction appeal, Todden carries the burden of proof and is required to establish the facts by a preponderance of the evidence. *Watts v. State,* 257 N.W.2d 70, 71 (Iowa 1977). Where, as here, a constitutional challenge is involved,

we review the evidence de novo. *Armento v. Baughman,* 290 N.W.2d 11, 15 (Iowa 1980).

I. *Were Todden's Due Process Rights Violated by the State's Recourse to Allegedly False Testimony?* [1]

▬ It is, of course, a violation of due process for the prosecution to suppress evidence favorable to the accused if that evidence is material to guilt or punishment, irrespective of good faith. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). This rule applies in three situations: (1) where evidence is discovered after trial that the prosecution's case included perjured testimony, of which the prosecution was aware, or should have been aware; (2) where the prosecution fails to comply with the accused's pretrial request for specific evidence; and (3) where the prosecution fails to comply with the accused's general request for *"Brady* material." *United States v. Agurs,* 427 U.S. 97, 103–07, 96 S.Ct. 2392, 2397–99, 49 L.Ed.2d 342, 349–52 (1976). Todden here attempts to bring his case within the first *Agurs* situation. Stated in the light most favorable to him, Todden's argument is that agent Pontious' testimony that he found the bloody sock in Todden's bedroom was false, that the prosecution knew or should have known it was false, and that there is a reasonable likelihood this "false" testimony affected the jury.

In *Hamann v. State,* 324 N.W.2d 906 (Iowa 1982), we made clear that the threshold for invoking the aid of *Brady* was high. We set out five considerations relevant to the first *Agurs* situation: (1) The prosecution must either introduce or fail to correct false testimony; (2) The prosecution must give false testimony at trial; (3) The prosecution must know the perjured testimony is false; (4) The testimony must be material; and (5) Defendant waives his right on postconviction to complain of perjured testimo-

---

**1.** Although the first and second issues in Todden's brief also assert an equal protection violation, the point is not supported by argument or

authority and is deemed waived. *State v. Potts,* 240 N.W.2d 654, 656 (Iowa 1976).

ny if he had reason to know such testimony was being used at trial. *Id.* at 909–10.

Todden's efforts to bring his case within the first *Agurs* situation fail for several reasons. First, he has not carried his burden to establish that Pontious' trial testimony was false. Pontious testified he found the seized evidence in Todden's bedroom. He did not testify it was found in the south*west* bedroom; in fact, the trial diagram used placed it in the south*east* bedroom containing the water bed and chest of drawers. At trial the defense never disputed the testimony that the seized items were found in Todden's bedroom at the time Pontious took possession of them. There was substantial evidence to support the postconviction court's finding that Pontious merely mislabeled the evidence tags, receipt and search warrant summary.

The question in this case is not, as it was in *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); or *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), whether clearly false testimony warrants a new trial, but whether the testimony *was* false. That question being answered in the negative, our inquiry might end. A second principle, however, supports our conclusion.

Even assuming Pontious' testimony was false, it is apparent that Todden waived his right to complain. In *Hamann,* 324 N.W.2d at 915, we wrote:

> [W]here defendant in a criminal case has reason to know the State has employed false testimony, he must act to impeach the witness at trial. He will not be permitted to gamble on an acquittal and withhold the impeaching evidence for use in a subsequent proceeding.

*See United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983) ("Evidence is not 'suppressed' if the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence.") (citations omitted).

Here the defense had unimpeded access to everything in the prosecutor's file. The document that ultimately alerted the defense to the discrepancy at issue here was the evidence receipt left at Todden's residence. Before trial, Todden's counsel examined prosecution files and noted in writing that certain evidence was seized from the south*west* bedroom. There is a compelling inference that counsel understandably did not appreciate the significance of this because in discussing the evidence with Todden the latter did not dispute the fact that the evidence was found in his bedroom.

Thus Todden's contention also falls within the *Hamann* waiver rule. We find no merit in his first asserted error.

II. *Were Todden's Due Process Rights Violated by the State's Failure to Identify for Him, With Particularity, Allegedly False Evidence?*

Here Todden attempts to bring his case within the third *Agurs* situation, that is, where the prosecution fails to comply with the accused's general request for "*Brady* material." He asserts that whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor to correct it, citing *Giglio,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104. He argues it was the duty of the prosecution to point out to the court that its witness Pontious had testified in contradiction to his own documentary evidence; that a duty to disclose is a duty to identify what is exculpatory.

The State argues that, before trial, Todden was provided all the evidence that reflected the mislabeling error, thus there was no suppression of evidence.

Much of what we have written in division I applies here. It is clear that before trial Todden had the information that he now claims was crucial, thus there was no suppression. *State v. Hall,* 249 N.W.2d 843, 847–48 (Iowa), *cert. denied,* 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977); *see* 3 Orfield, Criminal Procedure Under the Federal Rules § 26:338, at 649–50 (1966) ("In

general there is no prejudicial error if the information withheld is otherwise in the possession of the defendant."). We find no due process violation in this regard.

III. *Did the Postconviction Court Err in Deciding, Without Aid of a Jury, a Question of Fact?*

Todden asserts a jury, not the postconviction court, should have decided whether Pontious perjured himself or made a labeling error. He cites no decisions for this contention, other than those articulating the general rule that the credibility of a witness is ordinarily a question for the jury. *See State v. Frank*, 298 N.W.2d 324, 329 (Iowa 1980).

▮ Todden misconceives the role of a postconviction court. It has a statutory duty to make specific findings of fact, as we pointed out in *Allen v. State*, 217 N.W.2d 528, 530 (Iowa 1974). *See* Iowa Code § 663A.7 (1983). We have recognized a postconviction court's obligation to find facts without the aid of a jury in numerous decisions. *See, e.g., Fryer v. State*, 325 N.W.2d 400, 410 (Iowa 1982); *Kyle v. State*, 322 N.W.2d 299, 303 (Iowa 1982).

▮ Todden's application for postconviction relief alleged Pontious had testified falsely in the respect above discussed. He had the burden to prove this by a preponderance of the evidence. The court was required to determine whether or not this allegation was sustained. We find no error here.

We have examined and rejected all of the other arguments made by Todden even though they are not discussed in this opinion. We affirm the judgment of conviction and the judgment denying postconviction relief.

AFFIRMED ON BOTH APPEALS.