# IN THE COURT OF APPEALS OF IOWA

No. 24-1110
Filed June 18, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**STACY MARIE DIVELEY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Benton County, Ian K. Thornhill, Judge.

A defendant appeals her convictions for child endangerment. **AFFIRMED.**

Des C. Leehey, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

A jury convicted Stacy Diveley on six counts of child endangerment. She appeals, specifically challenging the district court's denial of her motion for mistrial. On appeal, she raises two *Brady* challenges and one challenge under rule 5.403 of the Iowa Rules of Evidence. The State disputes error is preserved on these issues. Upon review, we agree with the State as it relates to the *Brady* challenges. And even if error is preserved on the rule 5.403 challenge, Diveley has waived this issue on appeal. Accordingly, we affirm.

## I.      Background Facts and Proceedings

In 2011, Stacy began dating Jeff Diveley.[1] At the time, Stacy's daughter A.D. was ten years old and her daughter I.D. was five years old. Stacy and Jeff married in 2013, and Jeff later adopted both girls.

Within two years of the start of Stacy and Jeff's relationship, Jeff began sexually assaulting A.D. and I.D. Both girls reported the sexual assaults to Stacy. At trial, A.D. recalled, "I told her the first time it happened, and . . . I think she said she'd take care of it. But each consecutive time that I told her, she seemed to get more impatient or frustrated." As the sexual assaults escalated, A.D. stopped telling Stacy every time the sexual abuse occurred because "at that point I told her about so many instances of him inappropriately touching me that I didn't think she'd believe me or she'd say it was my fault." I.D.'s experiences seeking help from Stacy were equally stinging; I.D. testified that she "was terrified of Stacy" and that she never reported the abuse even to doctors because I.D. believed Stacy "would

---

[1] Because Stacy and Jeff Diveley share a last name, we use their first names for clarity.

have been pissed and slapped me and called me a cunt, bitch, whore, slut, all of those words."

At times, Stacy sent text messages to Jeff, confronting him about the abuse. Stacy took screenshots of these messages and sent them to A.D. In one message to Jeff, submitted as evidence at trial, Stacy texted, "Let me make myself clear one more time do not put your hands down their pants up their pants or anywhere around their private areas. I don't know why I need to keep telling you this . . . ." According to Stacy, though, the texts were a ruse, designed with Jeff's knowledge, sent only to pacify A.D.—who Stacy characterized as "ha[ving] a tendency to spiral."

Stacy continued to fail her daughters. When I.D. was fifteen years-old, she reported to a friend that Jeff vaginally penetrated her with his penis. I.D. also reported the rape to Stacy, after which "[Stacy] said she would go talk to Jeff." Stacy then brought Jeff to see I.D., called I.D. a liar and a slut, and slapped her. Jeff's sexual abuse of A.D. continued even after A.D. left for college, when she was forced home due to COVID-19. He continued to sexually abuse I.D. until 2022, when I.D. moved out of Stacy and Jeff's home and in with extended family.

In June 2022, the Benton County Sheriff's Office opened an investigation of Jeff for sexual abuse of I.D.[2] Deputy Laura Deaton served as the lead investigator and interviewed Stacy during the investigation. Stacy told Deputy Deaton that "she

---

[2] An earlier investigation was opened in October 2021 after I.D. reported the rape to her friend, but the investigation was closed after I.D. told investigators the rape was a dream. At trial, I.D. testified that Stacy instructed I.D. to tell investigators the rape was only a dream. This conduct was the basis for Stacy's witness tampering charge.

was always on [Jeff's] phone" and that she had looked through Jeff's phone for naked pictures of her daughters and pornography. Stacy alleged she found no naked pictures but admitted she knew Jeff watched pornography on his phone.

In November 2022, the State charged Stacy by trial information with six counts of child endangerment—for "knowingly act[ing] in a manner that created a substantial risk to a child or minor's physical, mental or emotional health, or safety and/or . . . knowingly permit[ing] the continuing physical abuse or sexual abuse" of A.D. and I.D.—and one count of witness tampering.

During trial, Deputy Deaton testified about cellphone extraction reports produced from Stacy's and Jeff's phones. Specifically relevant to this appeal, Deputy Deaton testified about three phrases discussed in the context of "pornography URLs" discovered on Jeff's phone. The State began a line of questions about "pornography URLs." Then the State asked, "can you give three searches that are specific to this case of relevance?" Before Deputy Deaton answered, Stacy objected:

> DEFENSE: Objection, as to relevance of what she was searching. I'm not sure how that's applicable to this case.
> COURT: Whose phone are we asking about here?
> PROSECUTOR: Jeff's phone.
> COURT: And do we have an exhibit? Are you talking about an exhibit?
> PROSECUTOR: No, Your Honor. This is based on the cell phone extraction, which was produced to the defense.
> COURT: And you're offering these for the truth of the matter asserted?
> PROSECUTOR: No, Your Honor.
> COURT: What are you offering them for?
> PROSECUTOR: Your Honor, we're offering it because the Defendant said that she was on the [sic] Jeff Diveley's phone all the time.
> COURT: So you're offering it for the limited purpose of her having some knowledge. Is that what you're offering it for?

> PROSECUTOR: Yes, Your Honor.
> COURT: All right.  Then based upon that limited purpose, the objection is overruled.  The witness can answer the question.  The jury will hear the answer only for the limited purpose the Court just stated.  Go ahead.

The State resumed questioning Deputy Deaton:

> PROSECUTOR: Were you able to find three of those pornography URL addresses that you believed were relevant to your investigation?
> DEATON: Yes.
> PROSECUTOR: Can you tell the jury those three addresses?
> DEATON: Dad fucks teen daughters; daddy fucking me, part one; daughter shows her pussy to dad.

After the close of the State's evidence—which followed Deputy Deaton's testimony—Stacy made an oral motion for mistrial based on an alleged *Brady* violation.[3]  The district court denied the motion, and the jury convicted Stacy on all six child endangerment charges.  The jury acquitted Stacy of the witness tampering charge.

Stacy appeals, challenging the district court's denial of her motion for mistrial.  She advances three grounds for her challenge.  First, she argues the admission of Deputy Deaton's testimony about the three "URLs" referencing incestual pornography were unfairly prejudicial and should have been excluded under Iowa Rule of Evidence 5.403.   Second, she contends the State impermissibly suppressed the evidence of the three phrases during discovery,

---

[3] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

amounting to a *Brady* violation. Third, she claims the disputed testimony was perjured, also an alleged *Brady* violation.[4]

## II.    *Brady* Challenges

The State disputes that Stacy preserved error on her *Brady* challenges to the district court's denial of her mistrial motion. Specifically, the State argues Stacy needed to make a motion for mistrial before the completion of Deputy Deaton's testimony to preserve error on her improper suppression and false testimony grounds.

Generally, a party must make a motion for mistrial as soon as the basis for the motion becomes apparent. *State v. Gibb*, 303 N.W.2d 673, 678 (Iowa 1981). If the motion is based on "alleged errors committed by [the] trial court in the introduction of evidence at trial," error preservation requires timely and specific objections. *Id.*

Stacy objected on relevancy grounds immediately after the State asked Deputy Deaton a question eliciting testimony about the disputed phrases. Stacy did not mention improper suppression, prosecutorial misconduct, false testimony, perjury, or *Brady*. The State explained the questioning was "based on the cell phone extraction, which was produced to the defense," and that it was being offered for the limited purpose of showing Stacy had "some knowledge." Stacy did not make any additional argument or request to be heard. The district court overruled Stacy's objection, and Deputy Deaton continued her testimony. Stacy

---

[4] *See State v. Todden*, 364 N.W.2d 195, 198–99 (Iowa 1985).

did not object after Deputy Deaton told the jury the specific three phrases she found in the cellphone extraction report.

On cross-examination, Stacy asked Deputy Deaton questions clarifying where evidence of her discovery of those phrases might be found. Deputy Deaton conceded she "did not include those specific URL's in [her] report," and that if she notified anyone about the specific findings before trial, it would have been the detective who first investigated Jeff for sexual abuse of I.D. and from whom Deputy Deaton took over the investigation. When Stacy was afforded an opportunity to perform recross examination, her questions focused solely on the foundation for Deputy Deaton's testimony about the phrases and whether Deputy Deaton "provide[d] that to anybody." After Stacy finished her recross-examination, the State asked one-question on further redirect: "The cellphone extraction, was that provided to defense in discovery?" Deputy Deaton replied, "Yes."

The State closed its case-in-chief after Deputy Deaton's examination concluded, and Stacy orally submitted her motion for mistrial, "based on what sounds to be a *Brady* violation."

The State contends Stacy's motion for mistrial was too late to preserve error because Stacy waited to make the motion until after the completion of Deputy Deaton's testimony, after the State rested its case-in-chief, and after Stacy made a motion for a judgment of acquittal. *See, e.g.*, *State v. Cornelius*, 293 N.W.2d 267, 269 (Iowa 1980) (determining the defendant failed to preserve error when he moved for mistrial after the State rested its case-in-chief because the "defendant should have asked for a mistrial when the allegedly prejudicial question was asked"); *Gibb*, 303 N.W.2d at 678 (finding error unpreserved on the defendant's

argument that witness testimony violated a constitutional right when the defendant did not assert that argument until his posttrial motion in arrest of judgment and request for new trial). Based on *Cornelius* and *Gibb*, the State submits that Stacy needed to move for a mistrial when she first became aware of the potential issues—which, based on her questioning, reasonably appears to have occurred at least during her initial cross examination.

Stacy did not respond to the State's challenge to error preservation on either the suppression issue or the perjury issue. Indeed, nowhere in her briefing does she address the timeliness component of error preservation on motions for mistrial, despite specifically acknowledging the State's challenges in her reply brief.[5] And without legal authority provided by Stacy to distinguish the present matter from those authorities supporting the State's position, to determine the authorities provided by the State do not instruct our error preservation analysis here would require us to take on a partisan role and advocate for error preservation on Stacy's behalf[6]—a role that we decline. *See Inghram v. Dairyland Mut. Ins. Co.*, 215

---

[5] We recognize that the questioning by counsel could possibly be sufficient for error preservation. *Cf., e.g.*, *State v. Ware*, 205 N.W.2d 700, 702–03 (Iowa 1973) (finding a motion for mistrial was timely made despite defense counsel continuing to cross-examine the witness whose testimony was in dispute when the continued cross-examination was for the purpose of "ascertain[ing]" information relevant to the defendant's subsequent mistrial motion). But Diveley did not make this argument, did not cite *Ware*, and did not attempt to distinguish her facts from the State's authorities.

[6] We also recognize that the cases cited by the State in support of its error preservation challenge are not substantively precise matches for the matters now before us—neither *Cornelius* nor *Gibb* dealt with alleged *Brady* violations. *See generally Cornelius*, 293 N.W.2d at 269; *Gibb*, 303 N.W.2d at 678. But the procedural timelines in those cases align with the procedural timeline here so that, if viewing the facts from an abstracted procedural standpoint, the State's reliance on *Cornelius* and *Gibb* is persuasive.

N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

Under these circumstances and under the authorities provided, we determine Stacy failed to preserve error on both of her challenges based on alleged *Brady* violations.

## III.      Relevance and Unfair Prejudice

The State also disputes Stacy preserved error on her rule 5.403 challenge. There is no question that Stacy preserved error by objecting to relevancy. The question is whether Stacy's relevance objection was sufficient to preserve error on her claim that "the URLs have no probative value and are unfairly prejudicial to Mrs. Diveley." *See State v. Mulvany*, 603 N.W.2d 630, 632 (Iowa Ct. App. 1999) ("Prior case law does not clearly delineate when a simple relevancy objection is sufficient to preserve a more specific argument on appellate review.").

Even assuming error was preserved, other than stating "Iowa Rule of Evidence 5.403 calls for the district court to exclude evidence that [sic] when the probative value of that evidence is substantially outweighed by a danger of unfair prejudice," Stacy provides no legal authority to support her claim that based on rule 5.403, the district court's denial of her motion for mistrial was an error. She merely argues the facts and voices her concerns that the phrases are "inflammatory as gasoline" and the unfair prejudice is "maximal." Without legal authority supporting her contention, our analysis ends here.[7]  *See* Iowa R. App.

---

[7] For the same reason, even if we were to assume error was preserved on Stacy's *Brady* challenges, her arguments lack legal authority beyond a bare recitation of

P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

## IV.    Conclusion

Stacy failed to preserve error on her *Brady* challenges.  Assuming she preserved error on her rule 5.403 challenge, her failure to provide supportive legal authority has waived the issue.  Accordingly, we affirm.

**AFFIRMED.**

---

the generally applicable rules in the opening paragraph of each issue.  Stacy provides no legal authority to support any claim that she satisfied the numerous elements necessary to satisfy her burden on either of her two *Brady* challenges. *See DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (recognizing three elements of a *Brady* suppression analysis: suppression, favorability, and materiality); *Todden*, 364 N.W.2d at 198–99 (identifying five "threshold" "considerations" relevant to a *Brady* perjury analysis).  Indeed, Diveley does not argue how these "URLs" could have been favorable to her defense.